MILMAN LABUDA LAW GROUP PLLC
Netanel Newberger
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
(516) 328-8899

Attorneys for Plaintiff
Randy Polansky

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| RANDY POLANSKY, | **Docket No.:** |
| Plaintiff, | **COMPLAINT** |
| -against- | |
| TUTTNAUER USA CO., LTD., GUY LERNER and KEVIN CONNORS, | **Jury Trial Demanded** |
| Defendants. | |

-------------------------------------------------------------------x

Plaintiff, Randy Polansky ("Plaintiff" or "Mr. Polansky"), by and through his attorneys, Milman Labuda Law Group PLLC, herein complains of defendants, Tuttnauer USA Co., Ltd. ("Tuttnauer"), Guy Lerner ("Mr. Lerner") and Kevin Connors ("Mr. Connors") (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.      This complaint seeks statutory and common law damages including punitive damages for Defendants' unlawful discriminatory practices in terminating the plaintiff, retaliating against him, and interfering with his rights in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.* (the "ADA") and the New York State Human Rights Law, New York Executive Law §§ 290 *et seq.* (the "NYSHRL").

## THE PARTIES

2.      Mr. Polansky is a resident and domiciliary of New York and resides in Nassau County.

3.      Upon information and belief, Tuttnauer is a Domestic Business Corporation with a principal place of business at 25 Power Drive, Hauppauge, New York 11788.

4.      Upon information and belief, Mr. Lerner is the President of Tuttnauer with a principal place of business at 25 Power Drive, Hauppauge, New York 11788.

5.      Upon information and belief, Mr. Connors is the Chief Financial Officer of Tuttnauer with a principal place of business at 25 Power Drive, Hauppauge, New York 11788.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter under the ADA and 28 U.S.C. §§ 1331, 1343(4) and supplemental jurisdiction over Mr. Polansky's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are located within the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

8.      Plaintiff has complied with all statutory prerequisites to filing this action.

9.      On or about February 20, 2020, Mr. Polansky filed a timely charge of disability discrimination and retaliation against Tuttnauer with the Equal Employment Opportunity Commission ("EEOC").

10.     The EEOC issued a Notice of Right to Sue on February 11, 2021, a true and accurate copy of which are attached hereto as Exhibit "A".

11.     Plaintiff brings this action within ninety (90) days of his receipt of the Notice of Right to Sue.

12.     Plaintiff has not filed, himself or through his attorneys, any action with the New York State Division of Human Rights.

13.     Plaintiff has not commenced any other court action regarding the allegations in this complaint.

## FACTS COMMON TO ALL CLAIMS

14.     Tuttnauer distributes sterilizers and infection control products.

15.     Mr. Lerner directs and controls the operations and labor relations of Tuttnauer.

16.     Mr. Lerner and Mr. Connors have the authority to hire, fire and discipline Tuttnauer employees.

17.     Mr. Lerner and Mr. Connors supervise, control and determine the terms and conditions of employment for Tuttnauer employees.

18.     In 1987, Mr. Polansky commenced his employment with Tuttnauer; his most recent position was Supply Chain Manager.

19.     Mr. Polansky was a highly competent employee and had never been reprimanded or disciplined, or otherwise received any criticism of his work performance.

20.     On July 30, 2019, while working for Tuttnauer, Mr. Polansky injured his groin by picking up a box at work and filed a Worker's Compensation claim for this injury.

21.     On October 29, 2019, also while working for Tuttnauer, Mr. Polansky went to lift a sterilizer and tore his bicep and filed another Worker's Compensation claim for this second injury.

22.     On December 11, 2019, Mr. Polansky went to CityMD Urgent Care for an evaluation concerning his first injury (groin).

23.     Mr. Polansky received a post-injury evaluation form, which indicated that he was restricted from lifting, carrying, pushing or pulling more than 25 pounds, and that he was fully restricted from bending, squatting and kneeling.

24.     Mr. Polansky provided the post injury evaluation form to Tuttnauer on December 11, 2019, thus engaging in a protected activity by putting Tuttnauer on notice of his injury and disability and his need for a reasonable accommodation.

25.     Merely five days later, on December 16, 2019, Mr. Polansky was informed by Mr. Lerner and Mr. Connors that, while they appreciated Mr. Polansky's years of service, Tuttnauer was eliminating Mr. Polansky's position of Supply Chain Manager, since his skill set was allegedly no longer of use to Tuttnauer.

26.     Mr. Lerner and Mr. Connors also informed Mr. Polansky that a "new" position was being created, the Director of Operations, and that Mr. Polansky was not qualified for this position.

27.     At no point did Tuttnauer attempt to determine the extent of Mr. Polansky's disability or otherwise engage in any interactive process to determine an effective accommodation for his disability.

28.     Mr. Polansky would have been able to perform the essential functions of his Supply Chain Manager job had he been granted a reasonable accommodation.

29.     The very next day, Mr. Polansky was offered a severance agreement, which actually required him to train his replacement, the Director of Operations.

30.     Mr. Polansky declined to sign the severance agreement.

31.     Upon information and belief, the "new" Director of Operations position was similar to, substantially identical or at least not substantially different from, the Supply Chain Manager position held by Mr. Polansky.

32.     Upon information and belief, Mr. Polansky was qualified to perform the Director of Operations position.

33.     Upon information and belief, Mr. Polansky was not hired for the Director of Operations position due to his disability or perceived disability.

34.     Mr. Polansky has been unable, despite reasonable efforts, to find comparable employment with similar benefits since his termination by Tuttnauer.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Disability Discrimination under the ADA- Tuttnauer)**

35.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 34.

36.     Mr. Polansky's injury to his groin and subsequent recovery constituted a disability under the ADA in that it substantially limited one of more major life activities, including but not limited to, lifting, carrying, pushing or pulling more than 25 pounds, and that he was fully restricted from bending, squatting and kneeling.

37.     Tuttnauer regarded Mr. Polansky as having a physical or mental impairment.

38.     Mr. Polansky was qualified for his position with Tuttnauer.

39.     In order to perform his job duties, Mr. Polansky required a reasonable accommodation of not lifting, carrying, pushing or pulling more than 25 pounds, and not bending, squatting and kneeling.

40.     Mr. Polansky immediately informed Tuttnauer of his need for a reasonable accommodation.

5

41.     Tuttnauer instead terminated Mr. Polansky because he had a disability.

42.     Tuttnauer terminated Mr. Polansky because he requested a reasonable accommodation.

43.     Tuttnauer terminated Mr. Polansky because it perceived him to be disabled.

44.     Tuttnauer did not engage in any communications with Mr. Polansky to determine the extent of his disability, actual or perceived, or otherwise engage in any interactive process to determine an effective accommodation for his disability.

45.     Mr. Polansky would have been able to fulfill the essential functions, duties and responsibilities of his job for Tuttnauer had he been granted reasonable accommodation.

46.     Tuttnauer would not have suffered any undue hardship by granting Mr. Polansky his requested accommodation.

47.     Upon information and belief, Mr. Polansky was qualified to perform the Director of Operations position, but he was not hired by Defendants for that position due to his disability or perceived disability.

48.     Moreover, the reason provided to Mr. Polansky for his termination, i.e., that his skill set was no longer of use to Tuttnauer, was clearly a pretext for discrimination.

49.     By Tuttnauer's own admission, Mr. Polansky's expertise was needed in order to train his replacement.

50.     Tuttnauer's conduct was in violation of the ADA.

51.     Mr. Polansky has been unable, despite reasonable efforts, to find comparable employment with comparable benefits since his termination by Tuttnauer.

52.     As a proximate result of Tuttnauer's discrimination against Plaintiff on the basis of his disability and Tuttnauer's perception of her disability, Plaintiff has suffered and continues to

suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

53.    As a further and proximate result of Tuttnauer's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

54.    The conduct of Tuttnauer was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation under the ADA- Tuttnauer)

55.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 54.

56.    Mr. Polansky was qualified for his position with Tuttnauer.

57.    Mr. Polansky engaged in a protective activity by requesting a reasonable accommodation.

58.    Tuttnauer denied Mr. Polansky's request and instead terminated his employment.

59.    As a proximate result of Tuttnauer's retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

60.    As a further and proximate result of Tuttnauer's retaliation, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

61.    The conduct of Tuttnauer was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Disability Discrimination under the NYSHRL- All Defendants)**

62.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 61.

63.    Mr. Polansky's injury to his groin and subsequent recovery constituted a disability under the NYSHRL in that it is a medically diagnosable condition.

64.    Defendants regarded Mr. Polansky as having a physical or mental impairment.

65.    Mr. Polansky was qualified for his position with Defendants.

66.    Mr. Polansky required a reasonable accommodation of not lifting, carrying, pushing or pulling more than 25 pounds, and not bending, squatting and kneeling.

67.    Mr. Polansky immediately informed Defendants of his need for a reasonable accommodation.

68.    Defendants instead terminated Mr. Polansky because he had a disability.

69.    Defendants terminated Mr. Polansky because he requested a reasonable accommodation.

70.    Defendants terminated Mr. Polansky because they perceived him to be disabled.

71.    Defendants did not engage in any communications with Mr. Polansky to determine the extent of his disability, actual or perceived, or otherwise engage in any interactive process to determine an effective accommodation for his disability.

72.    Mr. Polansky would have been able to fulfill the essential functions, duties and responsibilities of his job for Defendants had he been granted reasonable accommodation.

73.     Defendants would not have suffered any undue hardship by granting Mr. Polansky his requested accommodation.

74.     Upon information and belief, Mr. Polansky was qualified to perform the Director of Operations position, but he was not hired by Defendants for that position due to his disability or perceived disability.

75.     Moreover, the reason provided to Mr. Polansky for his termination, i.e., that his skill set was no longer of use to Defendants, was clearly a pretext for discrimination.

76.     By Defendants' own admission, Mr. Polansky's expertise was needed in order to train his replacement.

77.     Defendants' conduct was in violation of the NYSHRL.

78.     Mr. Polansky has been unable, despite reasonable efforts, to find comparable employment with comparable benefits since his termination by Defendants.

79.     As a proximate result of Defendants' discrimination against Plaintiff on the basis of his disability and Defendants' perception of his disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

80.     As a further and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

81.     The conduct of Defendants was outrageous and malicious, was intended to injure Plaintiff, or was done with wanton negligence or recklessness to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Aiding and Abetting Discriminatory Conduct under the NYSHRL-
### Mr. Lerner and Mr. Connors)

82.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 81.

83.     In order to perform his job duties, Mr. Polansky requested a reasonable accommodation of not lifting, carrying, pushing or pulling more than 25 pounds, and not bending, squatting and kneeling.

84.     Tuttnauer duly deliberated and decided instead to terminate Mr. Polansky because he had a disability.

85.     Tuttnauer duly deliberated and determined to hide the reason for the decision to terminate Mr. Polansky under the pretextual and unsubstantiated reason that his position had been eliminated and he was not qualified for the "new" position of Director of Operations.

86.     Mr. Lerner and Mr. Connors agreed to carry out the termination.

87.     Mr. Lerner and Mr. Connors carried out the termination.

88.     Mr. Lerner and Mr. Connors individually participated in Tuttnauer's termination of Mr. Polansky.

89.     The actions of Mr. Lerner and Mr. Connors violated the NYSHRL.

90.     As a proximate result of Mr. Lerner's and Mr. Connors's aiding and abetting of Tuttnauer's discrimination against Plaintiff on the basis of his disability and Defendants' perception of his disability, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, promotions, raises, bonuses, deferred compensation and other employment benefits.

91.     As a further and proximate result of Mr. Lerner's and Mr. Connors's aiding and abetting of Tuttnauer's discrimination against Plaintiff, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, emotional distress, and other incidental and consequential damages and expenses.

92.     The conduct of Mr. Lerner and Mr. Connors was outrageous and malicious, was intended to injure Plaintiff, or was done with wanton negligence or recklessness to Plaintiff's protected civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant judgment in his favor and against Defendants, containing the following relief:

a. An award of Plaintiff's actual damages in an amount to be determined at trial, plus prejudgment interest, for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

b. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering and emotional distress;

c. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

d. An award of punitive damages;

e. An award of reasonable attorneys' fees to the fullest extent permitted by law and the costs of this action; and

j.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed.R.Civ.P 38 (b), Plaintiff demands a trial by jury on all issues of fact and

damages stated herein.

Dated: Lake Success, New York
      May 10, 2021

                                    Netanel Newberger, Esq.
                                    Milman Labuda Law Group PLLC
                                    Attorneys for Plaintiff
                                    3000 Marcus Avenue, Suite 3W8
                                    Lake Success, NY 11042
                                    (516) 328-8899

To:

Tuttnauer USA Co., Ltd.
25 Power Drive
Hauppauge, NY 11788

Guy Lerner
25 Power Drive
Hauppauge, NY 11788

Kevin Connors
25 Power Drive
Hauppauge, NY 11788